IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| RICHARD L. HIOTT, ) | Civil Action No. 3:11-3380-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | |
| ) | **ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER ) | |
| OF SOCIAL SECURITY ) | |
| ) | |
| Defendant. ) | |
| ) | |

     Plaintiff, Richard L. Hiott, filed this action on December 12, 2011.  By Order of Reference (Doc. 19) from the Honorable R. Bryan Harwell, United States District Judge, pursuant to 28 U.S.C. § 636, Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, and the consent of the parties, the case is before the undersigned Magistrate Judge for a final order.  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI").

## ADMINISTRATIVE PROCEEDINGS

     Plaintiff filed an application for SSI on January 31, 2008, alleging disability as of January 1, 1998.[1]  Tr. 10, 106-108, 134.  Plaintiff's claim was denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on August 6, 2010, at which Plaintiff and a vocational expert ("VE") appeared and testified.  On October 28, 2010, the ALJ issued a decision denying benefits and finding that Plaintiff was not disabled. The

---

[1] Plaintiff subsequently amended his alleged onset date to January 18, 2009.  Tr. 10.



ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff can do.

Plaintiff was fifty-one years old at the time of the ALJ's decision. He has a sixth grade education and no past relevant work. Tr. 20, 132. Plaintiff alleges disability due to back and neck problems, hepatitis C, arthritis, pain shooting from his back to his left leg, arthritis, cirrhosis of his liver, chronic bronchitis, and nerve damage. Tr. 134.

The ALJ found (Tr. 13-21):

1. The claimant has not engaged in substantial gainful activity since January 18, 2009, the amended alleged onset date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: arthritis/degenerative joint disease; chronic bronchitis; alcohol abuse; a major depressive disorder; borderline intellectual functioning; and substance abuse (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium unskilled work requiring the following: sitting six of eight hours with normal breaks; sitting/standing six hours of eight with normal breaks and lifting/carrying 25 pounds frequently (defined as up to 2/3 of the workday) and 50 pounds occasionally. The claimant is also restricted to frequent performance of postural activities except for no climbing; avoidance of concentrated exposure to fumes, gases, dusts and poor ventilation and avoidance of exposure to hazardous, moving machinery, and unprotected heights. The claimant is also restricted to work involving simple, routine repetitive tasks with no interaction with co-workers or the public.

5. The claimant has no past relevant work (20 CFR 416.965).



6. The claimant was born on January 18, 1959, and was 50 years old, which is defined as an individual closely approaching advanced age, on the amended alleged onset date (20 CFR 416.963).

7. The claimant is illiterate and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since January 18, 2009, the amended alleged onset date (20 CFR 416.920(g)).

The Appeals Council denied the request for review in a decision issued October 17, 2011 (Tr. 1-3), and the ALJ's decision became the final decision of the Commissioner. Plaintiff filed this action in the United States District Court on December 12, 2011.

**STANDARD OF REVIEW**

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).



**MEDICAL EVIDENCE**[2]

In July 2008, Dr. Harriett Steinert performed an orthopedic consultative examination. Plaintiff reported that he suffered from back and neck problems, hepatitis C, arthritis, and alcoholic cirrhosis. Tr. 448. He stated that he used to drink a twelve-pack of beer per day, but quit drinking alcohol several weeks earlier. Dr. Steinert noted, however, that Plaintiff had the smell of alcohol on his breath. Plaintiff did not report having any history of intellectual deficits when describing his past medical history. Dr. Steinert noted that Plaintiff was very cooperative during the examination. Tr. 448-449.

In December 2008, Dr. Jennifer Bennice, a psychologist, conducted a consultative psychological evaluation to assess Plaintiff's alleged impairments of anxiety, depression, and substance abuse. Plaintiff reported that he spoke with his siblings occasionally and currently lived with his girlfriend. He stated that his girlfriend managed the majority of household responsibilities, including cooking, cleaning, and laundry. Plaintiff reported that he did not currently drive because he lost his license several years prior due to a DUI conviction. He reported he was unable to read, write, or spell beyond an elementary school level. Plaintiff denied any history of special education, but stated he had a history of being retained in grades. He reported he had worked as a painter his entire life, and had been unable to work the past four years due to chronic back pain. Tr. 519.

During Dr. Bennice's examination, Plaintiff endorsed several symptoms of depression, including depressed mood, anhedonia, sleep/appetite/concentration disturbance, feelings of guilt, and suicidal ideation. He denied any current suicidal intent. Dr. Bennice wrote that Plaintiff had a

---

[2]The medical evidence recited here only concerns Plaintiff's mental functioning (and not his alleged physical impairments), as Plaintiff's sole issues on appeal involve his intellectual functioning.



noteworthy history of taking multiple narcotic prescription medications simultaneously that he obtained from emergency room visits while not being under the regular care of a physician. She noted that Plaintiff's medical records indicated he had a history of demanding narcotic pain medication during emergency room visits. Dr. Bennice noted that Plaintiff had a history of alcohol dependence and that he continued to consume alcohol regularly. She also noted that Plaintiff reported that he took Ritalin, despite the fact that he denied having any history of attention deficit hyperactivity disorder. Dr. Bennice diagnosed Plaintiff with polysubstance dependence and recommended that he undergo inpatient substance abuse treatment. Dr. Bennice stated that, given Plaintiff's substance abuse, it was impossible to discern the etiology of his mood-related symptoms. Tr. 519-521.

On January 20, 2009, Dr. Michael Neboschick, a state agency psychologist, completed a Psychiatric Review Technique form and Mental Residual Functional Capacity Assessment. He opined that Plaintiff was capable of performing simple, repetitive tasks without special supervision; could attend work regularly and accept supervisory feedback; would have difficulty working in close proximity or coordination with co-workers; and would be best suited for a job that did not require continuous interaction with the general public. Tr. 524-540.

In September 2010, Dr. Mark Williams, a psychologist, conducted a consultative psychological evaluation. Plaintiff reported that he had been depressed a lot over the past year and he experienced symptoms of anxiety, irritability, anger, and crying. Plaintiff reported that he continued to drink alcohol on the weekends, despite the fact that he had a known history of liver disease. Plaintiff stated he had some learning problems in school, which included difficulties reading and writing. He said he repeated the fifth and sixth grades and that his school did not have special



education classes. He reported that his activities of daily living included feeding his chickens and dogs, watching television, and caring for his personal hygiene. Plaintiff reported that his girlfriend did the cooking, but he could cook himself if necessary. Wechsler Adult Intelligence Scale testing indicated that Plaintiff had a Full Scale IQ score of 60. Dr. Williams stated that he believed that Plaintiff's IQ scores were a mild underestimate of his intellectual functioning. Dr. Williams suspected that Plaintiff's overall cognitive functioning fell within the borderline intellectual functioning range. Based on his examination, Dr Williams opined that Plaintiff would be able to work in a simple job that was routine and repetitive in nature and that he would be able to interact appropriately with others in a setting where his rather unrefined social graces would not be problematic. Tr. 759-765.

## HEARING TESTIMONY/OTHER EVIDENCE

In May 2008, Plaintiff reported on a function report that his activities of daily living included trying to perform some housework and yard work when he was not in pain from his back; feeding and caring for his pets with help from friends and family; caring for his personal hygiene; preparing meals in the microwave; going shopping at the grocery store for food twice a month; and talking to friends on the phone. He indicated that he was not able to pay his bills or handle a savings account, could use a checkbook with help, and could count change. Plaintiff reported he did not get along well with authority figures including bosses, and he was fired several times because he did not "see eye to eye" with other people. Tr. 147-154.

In August 2008, Plaintiff reported in a telephone interview with an agency employee that he was able to tell analog and digital time without difficulty, and he was able to count and make change without difficulty. He reported he was able to grocery shop, make his own appointment, and ensure



his appointments were met.  Plaintiff stated that it was his physical problems, not any mental problem, that limited his activities of daily living.  The agency employee noted that Plaintiff was friendly and cooperative and thought that Plaintiff was able to concentrate, understand questions, and provide relevant information during the entire interview.  Tr. 155.

At the hearing before the ALJ, Plaintiff testified that he had attended school through the sixth grade.  Plaintiff testified that he was able to read and write a little bit, but was unable to spell.  Tr. 32.  Plaintiff testified that he had previously worked as a painter, but that he was no longer able to work as a painter due to symptoms of pain and numbness.  Tr. 33.  Plaintiff also testified that he was unable to perform other jobs because he was unable to read or write and did not have a high school education.  Tr. 38.

## **DISCUSSION**

Plaintiff alleges that the ALJ erred in failing to conclude that his mild mental retardation was a severe impairment and failing to conclude that he met the Listing of Impairments ("Listings"), 20 C.F.R. Pt. 404, Subpt. P., App. 1 at § 12.05C.  The Commissioner contends that the ALJ's determination that Plaintiff did not meet or equal the Listing at § 12.05C is supported by substantial evidence.[3]

---

[3]Substantial evidence is:
>  evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966).  It must do more, however, than merely create a suspicion that the fact to be established exists.  Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).



"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also have the findings shown in the listing of that impairment. 20 C.F.R. § 404.1525(d); see Bowen v. Yuckert, 482 U.S. 137, 146 and n. 5 (1987)(noting the claimant has the burden of showing that his impairment is presumptively disabling at step three of the sequential evaluation and that the Act requires him to furnish medical evidence regarding his condition). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. Medical equivalence can be found if the impairment(s) is/are at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 404.1526(a). A claimant has to establish that there was a "twelve-month period...during which all of the criteria in the Listing of Impairments [were] met." DeLorme v. Sullivan, 924 F.2d 841, 847 (9th Cir. 1991)(finding that the claimant's back impairment did not meet the requirements of section 1.05C; remanded on other grounds).

> The Listing at § 12.05C requires that the claimant show evidence of:
>
> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. The additional impairment under § 12.05C need not of itself be disabling, since that would make the requirement meaningless. Branham v. Hecker, 775 F.2d 1271, 1273 (4th Cir. 1985). Section 12.05 further provides:

> Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

8



20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.  Examples of "[d]eficits in adaptive functioning [may] include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health and safety." Jackson v. Astrue, 467 F. App'x 214, 218 (4th Cir. 2012)(citing Atkins v. Virginia, 536 U.S. 304, 309 n. 3 (2002)).

The parties do not appear to dispute that Plaintiff has met the requirements of a valid IQ score in the required range (as noted above, his full-scale IQ score was 60) and a physical impairment imposing additional and significant work-related limitations of function.  They disagree, however, as to whether Plaintiff has shown that he had deficits in adaptive functioning.  The Commissioner contends Plaintiff fails to show this based on Plaintiff's activities of daily living; his past relevant work as a painter; the fact that Plaintiff was never diagnosed with mental retardation; that Plaintiff reported that his inability to work stemmed from physical, not mental impairments; and that Plaintiff was able to carry on relationships.  Plaintiff appears to argue that he has shown deficits in adaptive functioning based on his education level, his present level of reading and writing, his problems getting along with those in the workplace, and that his activities of daily living were more restricted than recited by the Commissioner.

It is unclear from the ALJ's decision whether she fully considered the evidence in concluding that Plaintiff did not have deficits in adaptive functioning (and thus did not meet or equal § 12.05C). In her discussion of the Listings, the ALJ found that Plaintiff did not meet § 12.05C because "he does not have deficits in adaptive functioning as set forth in the medical evidence of record as explained in detail above." Tr. 16.  Above this statement, the ALJ found that Plaintiff had moderate restrictions in his activities of daily living based on his reports to Dr. Williams that he bathed on a daily basis,



fed his animals, and could cook if he had to do so. She found that Plaintiff had moderate difficulties in social functioning based on his screaming at an emergency room nurse in 2008, but these difficulties were not greater as supported by Dr. Williams' notations that Plaintiff was able to maintain a cooperative personal relationship with his girlfriend (assisting her with household chores, shopping, and cooking); his irritable social demeanor and hostility was not directed at Dr. Williams; and although Plaintiff's social graces were unrefined, he was not rude and his conversational skills were basically normal with regard to turn taking. Additionally, the ALJ found that Plaintiff only had moderate difficulties with concentration, persistence, and pace based on the report of Dr. Bennice that Plaintiff was oriented times four and his remote and recent memory functioning were only mildly impaired, and the report of Dr Williams that Plaintiff was oriented times three and maintained an awake, alert, and attentive presentation. Tr. 15.

It is unclear that the ALJ, in determining that Plaintiff did not meet or equal § 12.05C, properly considered all of the evidence of record. Although the ALJ appears to have found that Plaintiff did not have any deficits in adaptive functioning based on his activities of daily living, those activities were limited and the ALJ does not appear to have fully considered Plaintiff's statements in his function report concerning those activities. Although the ALJ stated that Plaintiff could feed his animals, he reported in the function report that he fed them with help from his friends and family. Tr. 148. The only cooking Plaintiff appears to have done involved a microwave. Tr. 149. Further, Plaintiff reported to Dr. Williams that he only completed the seventh grade and repeated two grades prior to that. Tr. 761. At the hearing, Plaintiff stated that he could only read a little bit, write a little bit, and could not spell. Tr. 32. Additionally, Plaintiff was confused as to his own age and date of birth. Tr. 31-32. Although the Commissioner points to Plaintiff's work background as supporting



a determination that he did not meet § 12.05C, there is no indication in the record that Plaintiff's past work was anything but unskilled labor. Further, the ALJ does not appear to have considered Plaintiff's function report in which he indicated that he was fired or laid off from several jobs because he did not see eye to eye with other people. Tr. 153. Although the causes for such are unclear, Plaintiff's earning history contains a number of gaps and appears to show years of less than full-time minimum wage earnings. See Tr. 126. Additionally, Dr. Bennice opined that "[b]ased on [Plaintiff's] current psychological functioning and substance abuse, it is unlikely that he would be able to independently manage any benefit payments to which he may be entitled." Tr. 521. Dr. Williams opined (on September 20, 2010) that Plaintiff could not manage benefits in his best interest. Tr. 758.

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence. This action is remanded to the Commissioner to determine whether Plaintiff meets or equals the Listing at § 12.05C.

It is, therefore, **ORDERED** that the Commissioner's decision is **reversed** pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c) and that the case is **remanded** to the Commissioner for further administrative action as set out above.

Joseph R. McCrorey
United States Magistrate Judge

November 20, 2012
Columbia, South Carolina

11